Thomas V. HOLLAND, Plaintiff–
Appellant,

v.

BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF DOUGLAS, State of Colorado; and Suzy McDanal, James Sullivan, and R.A. "Chris" Christensen, as members of the Board of County Commissioners of the County of Douglas; and Michael Maag, individually and as County Manager of the County of Douglas, Defendants–Appellees.

No. 93CA0197.

Colorado Court of Appeals,
Div. V.

March 24, 1994.

Rehearing Denied April 21, 1994.

Certiorari Denied Nov. 7, 1994.

Thomas A. Feldman, Denver, for plaintiff-appellant.

Hall & Evans, Cathy H. Greer, Pamela Skelton, Denver, J. Mark Hannen, Douglas County Atty., Castle Rock, for defendants-appellees.

Opinion by Judge CASEBOLT.

Plaintiff, Thomas V. Holland, appeals from the trial court's C.R.C.P. 12(b)(5) dismissal of certain claims and from its later summary judgment dismissing his remaining claims in favor of defendants, Board of County Commissioners of Douglas County (Commissioners), Suzy McDanal, James Sullivan, and R.A. Christensen, as members of the Board, and Michael Maag, individually, and as County Manager of Douglas County. We affirm

in part, reverse in part, and remand for further proceedings.

In September 1988, Holland, a licensed Colorado attorney, signed a written contract with the Douglas County Board of Commissioners to work as the Douglas County Attorney. In June 1989, Holland was notified in writing that his employment would not be renewed for another year, and his current employment was terminated. Under the terms of the agreement, the Commissioners' failure to renew, or their termination of the contract, entitled Holland to a lump sum payment of three months salary. This payment was tendered by the County and accepted by Holland. While Holland requested a pre-termination hearing, this request was denied.

Holland brought suit, alleging seven claims for relief, including state and federal due process violations for deprivation of a property right, violations of his First Amendment rights, retaliatory discharge claims under state common law, defamation, breach of contract, promissory estoppel, tortious interference with a contractual relationship, and an asserted violation of Colo. Const. art. XIV, § 8, which provides for county officers.

Pursuant to C.R.C.P. 12(b)(5), defendants filed a motion to dismiss several of Holland's claims for relief. The trial court subsequently dismissed Holland's claims of defamation and tortious interference, concluding they were barred by the Colorado Governmental Immunity Act, § 24–10–101, et seq., C.R.S. (1988 Repl.Vol. 10A). It also dismissed his claim under Colo. Const. art. XIV, § 8, finding that this provision did not grant Holland a constitutional right to a four-year appointment as County Attorney. Finally, the court dismissed all claims against the individual defendants based upon the doctrine of qualified immunity. Acting under § 13–17–201, C.R.S. (1987 Repl.Vol. 6A), the court awarded attorney fees in the amount of $1723 to defendants.

Thereafter, defendants filed a motion for summary judgment on Holland's remaining claims for relief. The trial court granted that motion.

## I.

Holland claims that, by virtue of written and allegedly implied contracts, he had a property interest in his employment and that, therefore, his due process rights were violated when he was not given a pre-termination hearing. Holland also asserts that the commissioners breached his contract and that, therefore, the trial court erred in dismissing his breach of contract claims. Because our determination of these claims is based on the same analysis, we will consider them together.

■ In considering a motion to dismiss under C.R.C.P. 12(b)(5), a court must construe the allegations of the complaint strictly against the moving party and must consider the factual allegations of the opposing party's pleadings as true. *Abts v. Board of Education*, 622 P.2d 518 (Colo.1980).

■ When reviewing a motion for summary judgment, a party against whom summary judgment is sought is entitled to the benefit of all favorable inferences that may be drawn from the facts. *Kaiser Foundation Health Plan v. Sharp*, 741 P.2d 714 (Colo.1987). Summary judgment is a drastic remedy and is never warranted except on a clear showing that there exists no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988).

■ A property interest under both the federal and state constitutions exists only when a public employee has a legitimate claim of entitlement to continued employment under state law. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Adams County School District No. 50 v. Dickey*, 791 P.2d 688 (Colo.1990). Sources of property interests include statutes, local ordinances, established rules or mutually explicit understandings, such as express or implied contracts. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Absent a property interest, a party may not have a legitimate claim for denial of due process. *Cleveland Board of Education v. Loudermill*, 470

U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

### A.

As support for his contentions, Holland directs us to certain provisions of his written contract, including language stating that "each party shall accordingly deal fairly and in good faith in carrying out the terms and conditions of this Agreement," "the parties are intending that this contract become a long-term employment relationship," and employment is pursuant to "other applicable policies and laws." We disagree with Holland's contentions.

■ Absent exceptions not applicable here, questions of contract interpretation are questions of law for the court. *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1978).

■ The existence of a property interest in employment is, likewise, a question of law. *Driggins v. City of Oklahoma City*, 954 F.2d 1511 (10th Cir.1992).

■ In order to determine the intent of a contract, it must be construed as a whole and effect must be given to every provision, if possible. *Colorado Interstate Gas Co. v. Chemco, Inc.*, 833 P.2d 786 (Colo.App.1991). Further, it is a basic principle of contract law that specific clauses of a contract control the effect of general clauses. *Denver Joint Stock Land Bank v. Markham*, 106 Colo. 509, 107 P.2d 313 (1940).

■ Here, several specific provisions of Holland's contract refer to his at-will employment status. For instance, one provision states that: "The term of this agreement shall be one year ... unless sooner terminated as provided herein." Further, another provision states that: "If the county fails to renew or determines to terminate the employment of Holland as County Attorney during the contract term ... the County agrees to pay Holland a lump sum cash payment...." Most importantly, the contract states that Holland's "employment may be terminated at any time with or without cause during the first year of this contract...."

These specific provisions of Holland's contract control over the general provisions cited by Holland. *See Denver Joint Stock Land Bank v. Markham, supra.* And, in construing these provisions in context with the entire contract, we conclude that a property interest was not created in Holland's employment by virtue of the express contract, since he was an employee at-will during his first, or probationary, year of employment. Moreover, we conclude that the trial court correctly dismissed the breach of contract claim, based on these express contract provisions.

■ The trial court here assumed all of the facts stated in Holland's affidavit to be true. Hence, it found there were no issues of material fact. We, likewise, have accepted all facts stated in Holland's affidavit as true. Accordingly, because no issue of material fact exists, we conclude that the trial court did not err in granting the Board's motion for summary judgment on these claims. *See Mancuso v. United Bank*, 818 P.2d 732 (Colo.1991).

### B.

Holland argues that he had a property interest in his employment by virtue of oral assurances of job security made by certain Board members. In the alternative, Holland asserts that he had a property interest by virtue of receiving the Employee Handbook. He further contends that the asserted promises and the Handbook support his breach of contract claims. We again disagree.

Holland claims that one Board member assured him that "she would use her considerable influence to make sure that [he] would retain his position as County Attorney for a number of years and not be removed therefrom." Holland asserts that this Board member again assured him of job security and that either she or another Board member stated that "you're our lawyer" and that he would remain the County's lawyer. Holland finally claims that the personnel director gave him a copy of the Employee Handbook and stated that Holland was governed by its provisions.

"If an express contract exists and an asserted implied contract is alleged to co-exist and relate to the same subject matter, there can be no implied contract between the parties because the provisions of the express contract supersede those of the implied contract." *Scott Co. v. MK–Ferguson Co.*, 832 P.2d 1000, 1002 (Colo.App.1991).

Here, the express contract stated that Holland's employment was at-will. This term of his contract, therefore, supersedes any subsequent oral assurances of job security, or any contrary Handbook provisions. *See Scott Co. v. MK–Ferguson Co., supra.*

*Continental Airlines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987), relied upon by Holland, is not to the contrary. In *Keenan*, there was no express contract which provided for at-will employment and which further expressly delineated, as here, rights and remedies of a terminated employee. Moreover, we are unable to find any evidence in the record demonstrating that these oral assurances were ratified by the Board. Since the Board members cannot bind the County to these assurances without authorization by the Board as an entity, the assurances were not binding. *Cf. Morris v. Board of County Commissioners*, 25 Colo.App. 416, 139 P. 582 (1914).

Hence, neither the Handbook nor the oral assurances demonstrate that the Board was making an offer to Holland. Further, we cannot agree that Holland's continued employment constitutes acceptance of and consideration for those promises.

Moreover, we note that the opening paragraph of the Employee Handbook states that it is "not intended to create nor should it be construed to create a contract between the county and its employees/official," and that "[e]mployment with the County is at will." *Cf. Schur v. Storage Technology Corp.*, 878 P.2d 51 (Colo.App.1994) (employee handbook contains clear provisions disclaiming intent to change at-will employee status).

Under these circumstances, therefore, we conclude that neither a property interest nor a contract right was created by the Handbook or any oral assurances of job security, nor can we conclude they support his breach of contract claim.

Since no genuine issue of material fact exists, the trial court did not err in granting the Board's motion for summary judgment on this contention. *Mancuso v. United Bank, supra.*

## II.

Relying upon *Department of Health v. Donahue*, 690 P.2d 243 (Colo.1984), Holland contends that, even if he lacked a property interest, he was nonetheless entitled to a pre-termination hearing because county policy provided for one. Specifically, he asserts that the Employee Handbook required the Board to grant him a pre-termination hearing and to give him written and verbal warnings prior to termination. We do not agree.

In *Donahue*, a Director of the Department of Health, who was a probationary employee, was dismissed from her position allegedly because of unsatisfactory job performance. The plaintiff filed an appeal of her discharge with the State Personnel Board alleging, in part, that she had been denied a pre-disciplinary meeting as required by state personnel rules. The Personnel Board affirmed the hearing officer's finding that the Department denied the plaintiff a meaningful pre-disciplinary meeting. The Supreme Court held that the plaintiff was entitled to a pre-disciplinary hearing, but only because the rule specifically applied to the Director.

*Donahue*, however, is distinguishable from the situation here and is not controlling. In *Donahue*, the court's holding was based upon a state personnel rule that, it determined, was clearly applicable to the employee. Here, we have previously concluded that the provisions in the Employee Handbook did not govern Holland. Hence, Holland was not entitled to a pre-termination hearing based upon the county policy, and again, therefore, the trial court did not err in granting the Board's motion for summary judgment on this claim. *See Mancuso v. United Bank, supra.*

## III.

Next, Holland argues that the trial court erred in granting summary judgment for the Board on his First Amendment claim. Specifically, Holland claims that he was terminated because he verbally complained about certain alleged illegal practices committed by county officials. He claims that the trial court erred in holding that his complaints involved legal advice and "internal personnel matters," rather than matters of public concern protected by the First Amendment. We find no error.

Public employment cannot be conditioned on a basis that infringes the employee's constitutionally protected interest in freedom of expression. *Barrett v. University of Colorado,* 851 P.2d 258 (Colo.App.1993). The determination of whether speech is constitutionally protected is a question of law, subject to our independent examination of the record. *Gabel v. Jefferson County School District R–1,* 824 P.2d 26 (Colo.App. 1991).

In determining whether Holland's speech is afforded protection under the First Amendment, we must employ a four-step test. First, Holland must show that his speech, as a citizen, touches upon a matter of public concern. If the speech is a matter of public concern, the burden then shifts to the Board to show that its interests outweigh the employee's interest, as a citizen, in commenting upon matters of public concern. If the Board shows that the balance weighs in its favor, it is unnecessary to go further because the Board has met its burden of demonstrating that Holland was terminated for legitimate reasons. If not, Holland must show that the protected activity was a substantial factor in the Board's decision to terminate him. Finally, the Board may defeat Holland's claim if it can show that it would have reached the same decision even in the absence of the protected speech. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Kemp v. State Board of Agriculture,* 803 P.2d 498 (Colo.1990).

We first examine whether Holland "as a *citizen,* [was] commenting upon matters of public concern." *Connick v. Myers, su-*

*pra,* 461 U.S. at 142, 103 S.Ct. at 1685, 75 L.Ed.2d at 715 (emphasis added). In making this determination, we consider the content, form, and context of the given statements, in conjunction with the motivation or "point" of the speaker. *See Kemp v. State Board of Agriculture, supra.*

Certain statements made by Holland to Board members clearly involved internal personnel matters, and therefore, were unprotected by the First Amendment. *See Connick v. Myers, supra.* For example, Holland advised the County Manager that he was required to abide by the provisions in the Employee Handbook before terminating an employee who had no written contract. Also, Holland complained that members of the County Manager's staff were interfering with his contractual relationship as the Board's legal advisor. These statements unquestionably involved internal personnel matters, as to which Holland was not commenting as a citizen, but as an employee on internal personnel matters. The content, form, and context in which these statements were made clearly militate against a finding of public concern. Hence, the trial court correctly concluded that these statements were unprotected by the First Amendment.

We also conclude that the remaining statements made by Holland were likewise not issued as a citizen upon matters of general concern to the public. Rather, as conceded in Holland's brief in response to defendants' motion for summary judgment, these statements were also made in the context of legal advice as the County Attorney. For instance, Holland's statements to a Board member, and to the County Manager, that acceptance of free athletic club memberships from a major developer was illegal, was legal advice to his client. Moreover, Holland's statements to a Board member that it might be a violation of the Colorado Open Records Act for county employees and commissioners to destroy or fail to disclose certain documents, was also legal advice to a client.

In *Goffer v. Marbury,* 956 F.2d 1045 (11th Cir.1992), the court specifically noted that an attorney's speech, when given in the context of advice under the attorney-client

**508**

privilege, is not by that fact alone precluded from protection under the First Amendment. However, it did indicate that this was a factor in determining content, form, and context.

Here, there is nothing in the record to show that Holland was attempting to bring those matters to the light of public scrutiny. The fact that the speech at issue here occurred during or as part of Holland's official duties is a significant factor. *Koch v. City of Hutchinson,* 847 F.2d 1436 (10th Cir.1988). Holland was not acting as a concerned public citizen, informing the public that the Board was not properly discharging its duties, or engaged in some way in misfeasance, malfeasance, or nonfeasance. Rather, his motivation was to give proper guidance to his clients for their utilization in performing their jobs.

Moreover, the fact that Holland did not raise these issues in a public forum, though not determinative, is important. *See Saye v. St. Vrain Valley School District RE–J,* 785 F.2d 862 (10th Cir.1986), and *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

Based on these circumstances, therefore, we again conclude that the trial court did not err in granting summary judgment on this claim. *Mancuso v. United Bank, supra.*

**IV.**

Holland further argues that the trial court erred in dismissing his state law claim of wrongful discharge in violation of public policy. Relying upon *State Personnel Board v. Lloyd,* 752 P.2d 559 (Colo.1988), Holland argues that this claim is not barred by the Colorado Governmental Immunity Act, § 24–10–102, C.R.S. (1988 Repl.Vol. 10A). We are not persuaded.

Section 24–10–106(1), C.R.S. (1988 Repl. Vol. 10A) of the Governmental Immunity Act states in pertinent part:

A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort ... except as provided otherwise in this section.

A retaliatory discharge claim is a common law tort claim. *See Martin Marietta Corp. v. Lorenz,* 823 P.2d 100 (Colo.1992). Accordingly, pursuant to § 24–10–106(1), Holland's wrongful discharge claim against the Board is barred by the Governmental Immunity Act, unless specifically excepted. We find no applicable exception in the statute.

Moreover, we conclude that *Lloyd* is distinguishable and, therefore, not controlling here. *Lloyd* involved a claim specifically brought under the whistleblower statute, § 24–50.5–103, C.R.S. (1982 Repl.Vol. 10), a special *statutorily* created claim for relief, not a common law tort action.

Thus, under these circumstances, the trial court did not err in dismissing the wrongful discharge claim.

**V.**

Holland further argues that, under C.R.C.P. 56(f), the trial court erred in ruling on defendants' motion for summary judgment before he completed discovery. Again, we perceive no error.

Pursuant to C.R.C.P. 56(f):

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had....

An abuse of discretion may result under C.R.C.P. 56(f) when a trial court refuses to grant a party a reasonable continuance to permit utilization of the discovery procedures provided by the rules of civil procedure, and when it is premature to grant a motion for summary judgment. *Miller v. First National Bank,* 156 Colo. 358, 399 P.2d 99 (1965).

Here, the record discloses that the action had been pending for ten months without any discovery activity when the summary judgment motion was filed in July 1992. In September 1992, Holland requested an extension to respond to the motion. The trial

court's order of October 27, 1992, granted the extension through December 11, 1992, but specifically stated "no future extension to respond to the motion will be granted."

Holland's response to the summary judgment motion was filed on October 27, 1992, the same day as the entry of the extension order. In that response brief Holland requested additional time to respond, under C.R.C.P. 56(f), and an appropriate affidavit supporting the request was filed.

The trial court entered its summary judgment order in late December 1992 without addressing Holland's additional extension request. Holland did not propound written discovery until December 7, 1992, and no depositions were scheduled.

We conclude that Holland had a reasonable period within which to conduct discovery, *see* C.R.C.P. 56(f), and he had reasonable notice that the trial court would not grant any further extensions of time.

Under these circumstances, therefore, we conclude that the trial court did not abuse its discretion in ruling on the Board's motion for summary judgment before Holland completed his discovery.

### VI.

■ Holland next argues that the trial court erred in dismissing his state law tort claim for tortious interference with contractual relationships against County Manager Maag in his individual capacity under C.R.C.P. 12(b)(5). We agree.

At the time this action was commenced, the Governmental Immunity Act, § 24–10–118(2), C.R.S. (1988 Repl.Vol. 10A), stated in pertinent part:

A public employee shall be immune from liability in any claim for injury ... which lies in tort or could lie in tort ... unless the act or omission causing such injury was willful and wanton....

Thus, under this provision, a party could plead a claim against a public employee if willful and wanton misconduct was alleged.

Here, one paragraph of Holland's complaint states:

Although Plaintiff requested Maag not to interfere with Plaintiff's relationship with the board, Defendant Maag, by words and conduct, intentionally and maliciously interfered with Plaintiff's appointment as County Attorney by providing to the board false and defamatory information thereby causing the Board to terminate Plaintiff's appointment as County Attorney.

■ In his complaint, therefore, Holland alleged misconduct on the part of Maag, which, if accepted as true, adequately asserted willful and wanton misconduct. Moreover, we note that it was incorrect, at the pleadings stage, for the trial court to dismiss the state law claim against Maag under the doctrine of qualified immunity. *Trimble v. City and County of Denver,* 697 P.2d 716 (Colo.1985). Accordingly, we conclude that Holland's pleading on this claim was sufficient under § 24–10–118(2), and we remand for further proceedings on this issue.

### VII.

■ Next, Holland asserts that the trial court erred in relying upon § 13–17–201, C.R.S. (1987 Repl.Vol. 6A) to assess attorney fees against him. He specifically asserts that, under this statute, attorney fees can be awarded only for defending claims sounding in tort. Accordingly, Holland claims that the trial court improperly granted attorney fees to defendants for defending against claims which either did not sound in tort or were preempted by federal law. We agree in part and remand for further proceedings.

Section 13–17–201 states in pertinent part:

In all actions brought as a result of a death or an injury to a person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

Under § 13–17–201, therefore, defendants are entitled to reasonable attorney fees whenever a *tort* action is dismissed prior to trial on the basis of a motion under C.R.C.P. 12(b). *See Employers Insurance of Wausau*

*v. RREEF USA Fund–II (Colorado) Inc.,* 805 P.2d 1186 (Colo.App.1991). Additionally, a separate panel of this court has recently determined that attorney fees under this section may be awarded only when an entire tort *action* is dismissed, not when a single claim has been dismissed. *First Interstate Bank v. Berenbaum,* 872 P.2d 1297 (Colo. App.1993).

Here, the trial court's C.R.C.P. 12(b)(5) dismissal affected only three of Holland's claims, namely his tort claims for defamation, tortious interference with contractual relationship, and alleged violation of the Colo. Const. art. XIV, § 8. Accordingly, under *First Interstate Bank v. Berenbaum, supra,* defendants are not entitled to attorney fees under § 13–17–201, and the trial court's award of such fees cannot stand.

## VIII.

Finally, Holland contends that the trial judge erred in failing to recuse himself. As support for this contention, Holland claims that the trial judge stated to him in a former case that he "did not want to see [Holland] in his court again as a litigant." Moreover, Holland claims that the trial judge entered orders against him even though he claims not to have received notice of the motions or requests for orders. Also, he claims that the trial judge directed the clerk of the court not to accept fax filings from Holland. We perceive no abuse of discretion.

If a motion for recusal and supporting affidavits allege facts which demonstrate that the trial judge has a "bent of mind," that judge's refusal to recuse or disqualify himself is an abuse of discretion. *Goebel v. Benton,* 830 P.2d 995 (Colo.1992); C.R.C.P. 97.

Moreover, the trial judge must accept the affidavits filed with the motion as true, even when, as here, the judge believes that the statements contained in the affidavit are false or that the meaning attributed to them by the party seeking recusal is erroneous. *Wright v. District Court,* 731 P.2d 661 (Colo.1987).

However, if the motion and supporting affidavits merely allege opinions or conclusions, unsubstantiated by facts supporting a reasonable inference of actual or apparent bias or prejudice, then disqualification is not required. *S.S. v. Wakefield,* 764 P.2d 70 (Colo.1988).

Here, we perceive no abuse of discretion in the trial judge's decision to deny Holland's motion for recusal. Legal rulings against Holland by the trial judge on issues appropriately before him are not grounds for recusal. *See Brewster v. District Court,* 811 P.2d 812 (Colo.1991). Further, Holland's claim that the trial judge directed the clerk of the court not to accept fax filings from him does not support a reasonable inference of actual or apparent bias or prejudice. *S.S. v. Wakefield, supra.*

As to the judge's alleged statement that he "did not want to see [Holland] in his court again as a litigant," Holland waited until one year of legal proceedings had occurred before seeking recusal on this ground. While we recognize that C.R.C.P. 97 does not fix the time within which a motion for disqualification should be filed, Holland's motion was not promptly filed after discovering grounds for recusal. *See In re Estate of Binford,* 839 P.2d 508 (Colo.App.1992).

The judgment is affirmed except as to the award of attorney fees and as to the dismissal of Holland's tort claim against County Manager Maag in his individual capacity. The award of attorney fees and dismissal of the tort claim against Maag in his individual capacity are reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

HUME and RULAND, JJ., concur.