65 F.3d 178
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Joseph M. CUSTODIO, M.D., Plaintiff-Appellant,
v.
John S. PARKER, M.D.; Steve E. Phurrough, M.D.; Harry S.
Collins, D.O.; William D. Strampel, D.O.; Michael YANCEY,
M.D.; Kay Kiehl, CNM; Lynne E. Schmidtke, CNM; Suzy
Anderson; United States of America; Bryan T. Lowe, Jr.,
Defendants-Appellees.
 No. 94-1587, (D.C. No. 93-C-1087).
 United States Court of Appeals, Tenth Circuit.
 Sept. 6, 1995.
 
 Before TACHA, LOGAN, and BRISCOE, Circuit Judges.
 ORDER AND JUDGMENT[1]
 LOGAN, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff Joseph M. Custodio appeals the district court's dismissal of his claims arising from his discharge as a civilian doctor practicing at Evans Army Community Hospital (EACH) at Fort Carson, Colorado, under the terms of a memorandum of understanding between plaintiff and EACH. We affirm.
 
 
 3
 On appeal, plaintiff raises the following issues: (1) whether his agreement with the Civilian Health and Medical Program for the Uniformed Services (CHAMPUS) and EACH, alone and in combination with his hospital staff privileges, constituted a property interest subject to due process protections under the Fifth Amendment; (2) whether the Administrative Procedure Act (APA) is the type of governmental regulatory remedy which constitutes a "special factor" precluding a Bivens claim; (3) whether the complaint alleges a liberty interest subject to due process protections; (4) whether negligence claims are barred by exceptions to the Federal Tort Claims Act; and finally, (5) whether supplemental jurisdiction over a state claim should be reinstated.
 
 
 4
 In April 1990 plaintiff and EACH entered into a memorandum of agreement whereby plaintiff was to provide medical care to CHAMPUS beneficiaries at the hospital. As part of the agreement, plaintiff was required to meet the licensing and privileging requirements of the hospital. By letter dated May 22, 1991, the commander of the medical corps at Fort Carson informed plaintiff that his agreement with the hospital was terminated as of June 2, 1991, and that he would no longer have hospital privileges at EACH. Plaintiff's request for a hearing was denied. Thereafter, in 1993, plaintiff was convicted of eighteen counts of submitting false claims to the United States under 18 U.S.C. 287 while he was employed at EACH. This court affirmed plaintiff's conviction in United States v. Custodio, 39 F.3d 1121 (10th Cir.1994).
 
 
 5
 In response to his discharge and related events, plaintiff filed a complaint in federal district court alleging that defendants had violated his procedural due process rights and asserting various negligence claims. Defendants moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment. The district court dismissed plaintiff's due process claims, finding that plaintiff had failed to demonstrate a viable property interest in the CHAMPUS agreement sufficient to trigger constitutional protections and that the APA provided a meaningful alternative remedy to his Bivens claim based on the hospital privileges. The district court further found that plaintiff had failed to state a liberty deprivation claim, and that plaintiff's negligence claims against the United States were barred by exceptions to the Federal Tort Claims Act. The court then declined to exercise supplemental jurisdiction over the state law claim and dismissed it pursuant to 28 U.S.C. 1367(c)(3).
 
 
 6
 The district court properly dismissed plaintiff's complaint if it appears that "plaintiff can prove no set of facts in support of the claims that would entitle him to relief." Coosewoon v. Meridian Oil Co., 25 F.3d 920, 924 (10th Cir.1994). " 'The sufficiency of a complaint is a question of law which we review de novo. Accordingly, we apply the same scrutiny to the complaint as did the trial court.' " Hunt v. Bennett, 17 F.3d 1263, 1265 (10th Cir.) (quoting Ayala v. Joy Mfg. Co., 877 F.2d 846, 847 (10th Cir.1989) (citations omitted)), cert. denied, 115 S.Ct. 107 (1994).
 
 
 7
 * Plaintiff first argues that the district court erred in finding he had no property interest in continued employment upon which he could base a claim for deprivation of due process. Under the proper circumstances, public employees may have property rights in continued employment. See Board of Regents v. Roth, 408 U.S. 564, 576-78 (1972). Such property rights are not created by the Due Process Clause of the Constitution; "[r]ather, they are created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract." Carnes v. Parker, 922 F.2d 1506, 1509 (10th Cir.1991).
 
 
 8
 Plaintiff identifies several possible sources for his alleged property right. Initially, he argues that the express terms of his agreement establish a property right in continued employment. The agreement provided that:
 
 
 9
 The minimum term of this agreement is 2 years with the option to renew for a 2-year period based upon mutual agreement. Termination of this agreement shall be predicated upon satisfactory written notice to the other party not less than 90 days before the proposed termination date. However, the 90-day notice may be waived by mutual consent of the parties to the agreement or unilaterally for the convenience of [the] government, including its mobilization requirements.
 
 
 10
 Appellant's App. 19 (emphasis added).
 
 
 11
 "When an employee bases an expectation of continued employment on an employment contract, we rely on state contract law to determine whether there is a legitimate claim to continued employment under that contract." Carnes, 922 F.2d at 1510. Under Colorado law employment that is terminable at will does not create a property interest. See Holland v. Board of County Comm'rs, 883 P.2d 500, 505 (Colo.Ct.App.), cert. denied, Nov. 7, 1994; cf. Workman v. Jordan, 32 F.3d 475, 479 (10th Cir.1994) (employment terminable only for cause creates a protectable property interest under Colorado law), cert. denied, 115 S.Ct. 1357 (1995). When plaintiff sought to assert his claim under the Contract Disputes Act, the Department of the Army took the position that his "arrangement" was not a contract because it was terminable unilaterally for the convenience of the government. Appellant's App. 22. Plaintiff's complaint referenced this claim denial as a reason he did not sue for breach of contract in the Court of Claims. Id. at 5. Because the agreement could be terminated at any time for the convenience of the government, we agree that this was an at-will employment situation which did not create a property interest. See Holland, 883 P.2d at 505; see also Gallegos v. City & County of Denver, 984 F.2d 358, 363 (10th Cir.) (construing Colorado law), cert. denied, 113 S.Ct. 2962 (1993).[2]
 
 
 12
 Plaintiff next argues that he had a property interest in his hospital privileges created by the provision for extensive grievance procedures combined with substantive restrictions on dismissal contained in the bylaws for the medical staff, the Army regulations, and the Federal Health Care Quality Improvement Act of 1986, 42 U.S.C. 11101-11152. We first note that then Colonel John S. Parker, commander of EACH, took the position that his termination letter stating that plaintiff "will no longer be privileged to practice medicine at Evans Army Community Hospital," see Appellant's App. 207, did not suspend or revoke plaintiff's hospital privileges. Id. at 67; Appellee's Supp.App. 13 (letter from U.S. Attorney). Parker contended that "[t]aking such action would have been pointless because once [plaintiff's] CHAMPUS partnership agreement was terminated he no longer occupied a status that allowed him to treat CHAMPUS patients at EACH.[3] Id.
 
 
 13
 Even if plaintiff's privileges were terminated we hold that he had no property interest entitled to procedural due process protection. When he was terminated from CHAMPUS plaintiff had not yet been accorded "defined privileges," i.e., "clinical privileges given the individual by the commander upon recommendation of the credentials committee after completion of a satisfactory provisional period."[4] Appellant's App. 54 (Army Regulation (AR) 40-68, Ch. 4, 4-2(a)(5)) (emphasis added).[5] Only practitioners who have secured defined privileges can invoke the provisions for suspension, restriction, and/or revocation of privileges contained in AR40-68 and identified by plaintiff as a source of his property right. Because plaintiff had not completed the provisional period when his privileges were terminated, he had no property interest in his provisional hospital privileges sufficient to trigger due process protections. See Walker v. United States, 744 F.2d 67, 68 (10th Cir.1984) (holding that, as a probationary employee, appellant had no property interest in continued employment); see also Roth, 408 U.S. at 578 (finding no property interest in continued employment where the contract of employment did not provide for renewal after expiration of one-year term). Because there is no genuine issue of material fact regarding this matter and because defendants would have been entitled to judgment as a matter of law, the district court was correct to dismiss this claim. Our resolution of this issue precludes the need to address plaintiff's Bivens /APA argument or his contention that the presence of these procedural protections, when incorporated into the agreement, gave rise to a property interest in the agreement.
 
 II
 
 14
 We next address plaintiff's liberty interest claim. Plaintiff's complaint alleged that after his termination "requests from prospective employers directed to EACH were not answered or answered after lengthy delays, with incomplete information and refusal to clarify the term 'termination' of privileges at EACH." Appellant's App. 3 (Complaint). He further alleged that some defendants made false statements about him and damaged him by referring to his circumstance as a "termination."
 
 
 15
 This court has described the parameters of a liberty interest case involving the discharge of a public employee:
 
 
 16
 When a public employer takes action to terminate an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities, a claim for relief is created.
 
 
 17
 Melton v. City of Okla. City, 928 F.2d 920, 927 (10th Cir.), cert. denied, 502 U.S. 906 (1991). A plaintiff must show that his dismissal resulted in "the publication of information which was false and stigmatizing--information which had the general effect of curtailing her future freedom of choice or action." Asbill v. Housing Auth. of the Choctaw Nation, 726 F.2d 1499, 1503 (10th Cir.1984) (footnotes omitted). The public statements " 'must rise to such a serious level as to place the employee's good name, reputation, honor, or integrity at stake.' " Six v. Henry, 42 F.3d 582, 585 (10th Cir.1994) (quoting Asbill, 726 F.2d at 1503). Under this test, the district court properly dismissed plaintiff's liberty claims against all defendants.
 
 
 18
 Failure to respond or responding tardily to requests for information from prospective employees does not constitute publication of false information. Referring to plaintiff's termination as a termination was not a false statement and, therefore, cannot sustain a liberty interest claim. See Melton, 928 F.2d at 929 n. 14. The allegation that false statements were made to plaintiff's superiors similarly fails to state a claim because "intra-government dissemination, by itself, falls short of the Supreme Court's notion of publication: 'to be made public.' " Asbill, 726 F.2d at 1503 (quoting Bishop v. Wood, 426 U.S. 341 (1976)). The district court properly dismissed plaintiff's claims based on a liberty interest in future employment.
 
 III
 
 19
 Finally, we address plaintiff's contention that the district court should not have dismissed his negligence claims against the United States. Plaintiff is estopped from asserting negligence regarding CHAMPUS billing practices by virtue of his criminal conviction for making false claims to the government, a judgment which compels the conclusion that plaintiff's conduct was knowing and voluntary and not the result of some third party's negligence. See Orjias v. Stevenson, 31 F.3d 995, 1010 (10th Cir.) (applying federal law of collateral estoppel because issues sought to be precluded stemmed from a prior federal court judgment), cert. denied, 115 S.Ct. 511 (1994); see also State Farm Fire & Casualty Co. v. Mhoon, 31 F.3d 979, 985-86 (10th Cir.1994) (noting that federal law approves use of nonmutual offensive collateral estoppel and that jury in prior criminal case had already determined defendant's actions to be entirely intentional).
 
 
 20
 Plaintiff's claims regarding negligent failure to apply Army regulations or the staff medical bylaws were properly dismissed because, as discussed above, plaintiff was not yet eligible to claim their procedural benefits. Plaintiff's claims based on negligent failure to maintain personnel records also were properly dismissed. The Federal Tort Claims Act waives sovereign immunity only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the [tortious] act or omission occurred." 28 U.S.C. 1346(b). Plaintiff failed to cite any Colorado law recognizing a cause of action for negligently failing to maintain personnel records. His general proposition that Colorado recognizes the basic elements of all tort claims, i.e., duty, breach of duty, and damages, is insufficient to satisfy this "law of the place" requirement. Plaintiff's negligence claims were properly dismissed.
 
 
 21
 After dismissing all federal claims, the district court had discretion to try the remaining state claim if, "given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir.1990). The district court did not abuse its discretion in dismissing the state claim.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The parties often referred to their working arrangement as a partnership. For example, plaintiff does not dispute that the umbrella authority for the agreement is Department of Defense Instruction 6010.12, dated October 22, 1987, subject: Military-Civilian Health Services Partnership Program. Appellant's App. 22. The agreement was submitted to the Partnership Program Director of the CHAMPUS Fiscal Intermediary of Blue Cross for approval. Id. at 20. While not a partnership in the strict legal sense, these and other references to partnership, a relationship that continues only as long as there is mutual continuing consent, bolster our conclusion that plaintiff's arrangement with EACH was an at-will employment situation
 
 
 [3]
 Defendants maintain that although "[a]n active-duty Army physician would have to hold hospital privileges under AR 40-68, ... it cannot seriously be contended that the Army would have to independently hold a hearing on privileges if he/she ceased to be member of the Army for any reason." Appellee's Brief at 22. They maintain, correctly we believe, that the same rule would apply to plaintiff, who was hired to treat military patients in a military hospital
 
 
 [4]
 Plaintiff's conditional privileges were to expire on June 6, 1991. The committee had determined, on May 10, 1991, that plaintiff would be granted full privileges on June 6, 1991. See Appellant's App. 76-77. But plaintiff was notified on May 22, 1991, that, as of June 2, 1991, he would "no longer be privileged to practice medicine at Evans Army Community Hospital." Id. at 21
 
 
 [5]
 The district court granted defendants' motion to dismiss, rather than their motion for summary judgment. We note, however, that, although not attached to the complaint, the record on appeal contains a copy of AR40-68 and the medical staff bylaws. We are free to affirm the district court on any basis supported by the record, Medina v. City & County of Denver, 960 F.2d 1493, 1495 n. 1 (10th Cir.1992), and are not bound by the district court's characterization of the motion as a motion to dismiss, Smith v. Yellow Freight System, Inc., 536 F.2d 1320, 1322 (10th Cir.1976). Thus, we can consider the Army regulation and bylaws in determining, for purposes of summary judgment, whether there were any genuine issues of material fact and whether judgment for defendants was warranted as a matter of law. See Fed.R.Civ.P. 56