**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 26, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PATRICIA RODRIGUEZ,

        Plaintiff-Appellant,

    v.

WET INK, LLC, doing business as
ALPHAGRAPHICS, also known as
WET INK CORPORATION,

        Defendant-Appellee.

_____

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, and
NATIONAL EMPLOYMENT
LAWYERS ASSOCIATION,

        Amici Curiae.

No. 08-1313

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 08-cv-857-RPM-CBS)**

---

Susan R. Hahn, Law Office of Susan R. Hahn, LLC, Littleton, Colorado, for
Appellant.

Joanne P. Underhill (Colin E. Moriarty with her on the brief), Underhill &
Underhill, P.C., Greenwood Village, Colorado, for Appellee.

James M. Tucker, (John F. Suhre, Attorney, Vincent J. Blackwood, Acting
Associate General Counsel, and James L. Lee, Deputy General Counsel, with him
on the brief) Equal Employment Opportunity Commission, Office of General
Counsel, Washington, District of Columbia, for Amicus Curiae Equal

Employment Opportunity Commission, and Barry D. Roseman, McNamara, Roseman, Martinez & Kazmierski, LLP, Denver, Colorado, with Stefano G. Moscato, National Employment Lawyers Association, San Francisco, California, on the brief for Amicus Curiae National Employment Lawyers Association.

---

Before **BRISCOE**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Patricia Rodriguez appeals the district court's dismissal of her federal employment discrimination suit against her former employer, Wet Ink, LLC. The district court held Rodriguez's suit was time barred because she filed it more than 90 days after she received a notice of right to sue from the Colorado Civil Rights Division. We conclude the state agency's notice in this case does not trigger the 90-day limitation period for purposes of filing a federal action under Title VII, 42 U.S.C. § 2000e et. seq.

We exercise jurisdiction under 28 U.S.C. § 1291, and REVERSE the district court's order of summary judgment.

## I. Background

Rodriguez worked for Wet Ink until her employment was terminated in August 2006. Three months later, she filed separate discrimination charges with both the Colorado Civil Rights Division (CCRD), a state agency empowered to investigate claims of employment discrimination, and the federal Equal Employment Opportunity Commission (EEOC). Rodriguez alleged her supervisor

at Wet Ink discriminated against her based on her national origin, ancestry, and sex, and Wet Ink fired her in retaliation for complaining about the discrimination. The CCRD found no substantial basis for Rodriguez's ethnic origin and retaliation claims but concluded the sex discrimination claims had merit. The CCRD referred the matter for mediation.

Following unsuccessful mediation of her sex discrimination claims, Rodriguez requested a right-to-sue notice from both the CCRD and the EEOC. The CCRD promptly issued a right-to-sue notice that said its jurisdiction had ceased on November 25, 2007. The EEOC also concluded it would not pursue the charges, but Rodriguez did not receive the EEOC's right-to-sue notice until two months later, on January 29, 2008. Both Colorado and federal law require a discrimination plaintiff to file suit within 90 days of certain agency action: the loss of jurisdiction under Colorado law, *see* COLO. REV. STAT. § 24-34-306(11), and the receipt of a right-to-sue notice under federal law, *see* 42 U.S.C. § 2000e-5(f)(1). On April 25, 2008—within 90 days of receiving the EEOC's notice, but more than 90 days after the CCRD's jurisdiction ceased—Rodriguez filed suit in federal district court.

The district court dismissed Rodriguez's action as time barred. Although Rodriguez pleaded only federal claims, the district court concluded that the 90-day filing period for her federal claims ran from the CCRD's jurisdiction date, not from the date she received the EEOC's notice.

## II. Discussion

The district court found as a matter of law that the CCRD's notice triggered the federal statutory filing period. "The construction and applicability of a federal statute of limitation is a question of law we review *de novo*." *United States v. Telluride Co.*, 146 F.3d 1241, 1244 (10th Cir. 1998).[1]

Both state and federal law require discrimination complainants to receive right-to-sue notices to file private civil actions. Under federal law, for example, the EEOC or the Attorney General "shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought." *See* 42 U.S.C. § 2000e-5(f)(1); *see also Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) ("It is well-established that Title VII requires a plaintiff to exhaust his or her administrative remedies before filing suit."); *cf.* COLO. REV. STAT. § 24-34-306(11) (providing that if a complainant receives a right-to-sue notice, he or she "may seek [] relief . . . by filing a civil action in the district court for the district in which the alleged discriminatory or unfair practice occurred").

State and federal law differ on when a civil action may be filed. Colorado law requires discrimination plaintiffs to file suit within 90 days after the CCRD's

---

[1] Although the CCRD is a state agency, this appeal presents only a federal question. Rodriguez filed suit in federal court alleging exclusively federal statutory violations and, therefore, the relevant filing period is that set out in Title VII, not state law.

-4-

jurisdiction ceases. *See* COLO. REV. STAT. § 24-34-306(11). Federal law, on the other hand, requires plaintiffs to file suit within 90 days of receiving a right-to-sue notice from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1).

Despite these differences in the applicable federal and state statutory procedures, federal law authorizes the EEOC to cooperate with and utilize state agencies in the course of enforcing federal anti-discrimination statutes. *See id.* (authorizing the EEOC "to cooperate with and, with their consent, utilize regional, State, local, and other agencies, both public and private, and individuals"). The EEOC has interpreted this statutory authority to permit it to enter into worksharing agreements with local anti-discrimination agencies. Under this authority, the EEOC may "enter into agreements with [local] agencies to establish effective and integrated resolution procedures. Such agreements may include, but need not be limited to, cooperative arrangements to provide for processing of certain charges by the Commission, rather than by the [local] agency during the [90-day] period . . . ." 29 C.F.R. § 1601.13(c).

For a number of years, the EEOC and Colorado have entered into a worksharing agreement pursuant to this authority. Under this cooperative agreement, the CCRD and EEOC shared responsibility in reviewing and investigating Rodriguez's charges.

We conclude the CCRD's right-to-sue notice did not trigger the federal filing period in this case, for two reasons. First, the agencies' worksharing

agreement does not authorize the CCRD to issue right-to-sue notices on behalf of the EEOC. Second, the CCRD's notice did not trigger Title VII's 90-day limitations period.

### A. The Worksharing Agreement

The worksharing agreement between the CCRD and the EEOC states that each agency "designate[s] the other as its agent for the purpose of receiving and drafting [employment discrimination] charges . . . ." Aplt. App. at 54. Accordingly, after each agency receives a discrimination charge, it is filed automatically with the other agency. The agreement then delegates authority to the CCRD to receive, investigate, and draft charges on behalf of the EEOC. The agreement, however, also expressly limits the delegation of authority: "*This delegation of authority to receive charges does not include the right of one Agency to determine the jurisdiction of the other Agency over a charge.*" *Id.* (emphasis added).

As to the investigation of the charges' merits, the agreement provides that the CCRD may "receiv[e] and draft[] charges," and, "once [the CCRD] begins an investigation, it resolves the charge." *Id.* The resolution of charges by the CCRD is not binding on the EEOC. According to the worksharing agreement and federal regulations, the EEOC is only required to give "substantial weight" to state agency final action and the EEOC is not bound by the state action. 29 C.F.R. § 1601.21(e); Aplt. App. at 57. Thus, the EEOC's Notice of Charge of

-6-

Discrimination informs parties that the state agency's final "findings and orders will be given weight by EEOC in making its *own determination* as to whether reasonable cause exists to believe that discrimination has occurred." Aplt. App. at 21 (emphasis added). The EEOC's substantial weight review occurs only after the state agency—here, the CCRD—completes its review and investigation. Aplt. App. at 57.

Rodriguez and the EEOC contend that nothing in the worksharing agreement authorizes the CCRD to act on behalf of the EEOC for this purpose. They argue the agreement delegates a limited investigatory authority to the CCRD, but the EEOC reserves its authority to conduct a substantial weight review and then issue a right-to-sue notice terminating its jurisdiction. We agree.

As an initial matter, this case does not require us to resolve whether the EEOC has the statutory authority to delegate to a state agency the power to issue right-to-sue notices on its behalf. For purposes of our analysis, we can assume it may do so.

Wet Ink contends the worksharing agreement authorizes the CCRD to issue right-to-sue notices on the EEOC's behalf, and points to the portion of the agreement that allows the CCRD to "resolv[e]" charges. Wet Ink further argues to "resolve" a charge necessarily includes the power to make a final administrative decision on the legal status of the claim.

We find this interpretation of the worksharing agreement unpersuasive. The plain language of the agreement does not authorize the CCRD to resolve charges for the EEOC in a final, binding manner. Instead, the agreement merely allows the EEOC to give some deference to the CCRD's resolution of the charges. That deference is not a delegation of the EEOC's requirement to make its own, final administrative determination. To the contrary, according to the agreement, the EEOC will conduct its own substantial weight review of the CCRD's final findings, and the Notice of Charge of Discrimination expressly states that thereafter the EEOC will make "its own determination as to whether reasonable cause exists to believe that discrimination has occurred." Aplt. App. at 21.

Only following the substantial weight review does the EEOC finally resolve the complaint. Thus, even if the authorization to the CCRD to resolve charges implies the power to make some final factual or legal determinations, the worksharing agreement makes clear that the power is contingent upon the EEOC's final review. Before the EEOC makes its final decision, the CCRD's power to "resolve" charges—whatever meaning we give that term—is merely a recommendation that has no binding effect on the EEOC. It is implausible that the worksharing agreement would be so careful to make the CCRD's resolution of charges advisory, yet allow the CCRD to bind discrimination complainants through the issuance of a right-to-sue notice. This is especially true when the

-8-

agreement does not even require the CCRD to give the EEOC notice of its own resolution of charges under Colorado law.

The worksharing agreement's express preservation of each agency's jurisdiction further supports our conclusion that the CCRD is not authorized to send right-to-sue notices on the EEOC's behalf. After authorizing a joint agency "for the purpose of receiving and drafting charges," the agreement cautions, "[t]his delegation of authority to receive charges does not include the right of one Agency to determine the jurisdiction of the other Agency over a charge." Aplt. App. at 54.

Finding an implied power to send right-to-sue notices would conflict with the agreement's express jurisdictional preservation for at least two additional reasons. First, under state law, the complainant's receipt of a right-to-sue notice is one way the CCRD's jurisdiction can cease. *See* COLO. REV. STAT. § 24-34-306(11) ("[I]f the complainant has requested and received a notice of right to sue . . . the jurisdiction of the [CCRD] over the complaint shall cease . . . ."). If the worksharing agreement's joint agency included the power to send right-to-sue notices, the EEOC would be authorized to terminate the CCRD's jurisdiction, which is contrary to the agreement's jurisdictional preservation provisions.

Second, the CCRD's issuance of right-to-sue notices also would terminate the EEOC's jurisdiction. The EEOC is prohibited from bringing suit based on a complainant's charge if the complainant has already filed a private action. *See*

-9-

*EEOC v. Cont'l Oil Co.*, 548 F.2d 884, 889–90 (10th Cir. 1977) (adopting the holding of *EEOC v. Mo. Pac. R.R.*, 493 F.2d 71 (8th Cir. 1974) that after the complainant has filed a suit, the EEOC only can seek permissive intervention and cannot file its own suit); *accord EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1292–93 (7th Cir. 1993). A delegation of this authority effectively would block the EEOC from making an independent judgment on whether to file Title VII claims. We doubt the EEOC would delegate this authority absent explicit language doing so.

Other cases construing similar state and federal right-to-sue notices support our conclusion. These cases, while not directly on point, conclude that a state agency's right-to-sue notice does not trigger the federal filing period and vice versa.

The closest case to the issue here presents the converse of our facts. In *Vielma v. Eureka Co.*, 218 F.3d 458 (5th Cir. 2000), the complainant received an EEOC right-to-sue notice before receiving notice from the state agency. The complainant subsequently sued in state court on state law grounds within the relevant state period but more than 90 days after receiving the federal notice. The federal/state worksharing agreement provided that the state agency and the EEOC "designate the other as its agent for the purpose of receiving and drafting charges." *Id*. at 462. In construing this language, the court concluded that the EEOC—even if the notice could be construed to speak for the state

agency—could not issue a right-to-sue notice on the state agency's behalf because doing so would exceed the scope of authority delegated in the worksharing agreement. *Id*. at 464. The court went on to observe that its "conclusion also finds support in the fact that in the reverse situation, receipt of a [state agency] letter would *not* trigger the analogous EEOC ninety-day filing period." *Id.* at 466 (emphasis in the original).

Wet Ink points to a Ninth Circuit case to support its position, but the case is readily distinguishable. In *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097 (9th Cir. 2008), the plaintiff received a state notice authorizing her to sue. She did not receive a federal notice even though she was *legally entitled* to one under Title VII because the EEOC had not made a timely final decision. *See* 42 U.S.C. § 2000e-5(f)(1). The plaintiff filed suit in federal court on state and federal grounds. The court held the federal claims could proceed despite the EEOC's failure to issue a right-to-sue notice. The Ninth Circuit did not address whether the state notice triggered the federal filing period. The court held that "once a plaintiff is *entitled* to receive a [federal] right-to-sue letter . . . it makes no difference whether the plaintiff actually obtained it." *Surrell*, 518 F.3d at 1105 (emphasis in the original). The statutory filing period simply was not at issue in *Surrell*, and the EEOC's timeliness is not in question in the case before us.

Finally, at least two recent district courts have addressed the issue in the context of state right-to-sue notices. In both cases, the court found the state

-11-

notice did not trigger Title VII's 90-day filing limitation. *See Albright v.*
*Philadelphia*, 399 F. Supp. 2d 575, 583 n.13 (E.D. Pa. 2005) (holding the state
notice did not constitute "final agency action" by the EEOC); *Pérez-Cordero v.*
*Wal-Mart PR, Inc.*, 235 F. Supp. 2d 95, 102 (D.P.R. 2002) (holding the state
notice did not trigger the federal filing period).

In sum, nothing in the worksharing agreement or relevant case law supports
Wet Ink's view that the CCRD can issue right-to-sue notices on behalf of the
EEOC.

### B.  The Right-to-Sue Notice

Even if the worksharing agreement could be construed to authorize the
CCRD to issue notices of right-to-sue on behalf of the EEOC, the CCRD's notice
here was inadequate to inform Rodriguez of her federal rights.

First, nothing in the CCRD's notice suggests that the CCRD and the EEOC
intended that one agency's notice would speak for the other agency.  The CCRD's
notice is printed on official state stationery, signed by the director of the state
agency, and references only the state charge number.  Aplt. App. at 48–9.  The
notice refers to state law and the potential for filing a claim in state court.
Nowhere does it reference the parallel federal charge.  The notice states, without
even referencing federal law in general or Title VII in particular, that it was
issued "[p]ursuant to C.R.S. [§] 24-34-306 (15)" and that it constitutes exhaustion
of administrative remedies "**pursuant to [Colorado law.]**"  *Id.* (emphasis in the

-12-

original).  While the notice mentions the EEOC in passing, a reasonable complainant reading it would not understand how it implicates federal rights.[2]

This understanding is confirmed by a comparison with the EEOC's right-to-sue notice.  That notice states that Rodriguez's "lawsuit under Title VII or the ADA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice** or your right-to-sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)"  Aplt. App. at 51 (emphasis in the original).  Moreover, the EEOC's notice is printed on federal stationery, signed by the director of the regional office, and references only the federal charge number.  *Id.*

In sum, neither the CCRD's notice nor the EEOC's notice would inform a complainant that the agencies were acting on each other's behalf for purposes of triggering applicable filing deadlines.

### III.  Conclusion

In conclusion, neither the worksharing agreement nor the notice of right-to-sue issued by the CCRD fulfill the EEOC's obligation to issue its own right-to-sue notice to trigger Title VII's 90-day limitations period.  We therefore

---

[2]  The CCRD's notice also does not comply with the EEOC's requirements for a notice of right-to-sue.  Federal regulations require the notice to contain authorization to bring a suit under Title VII, advice concerning the prospective suit, and a copy of the charge.  *See* 29 C.F.R. § 1601.28(e).  The CCRD's notice contained none of this information.

-13-

REVERSE and REMAND to the district court for additional proceedings

consistent with this opinion.